1 | TERESA C. CHOW (SBN 237694)
*tchow@bakerlaw.com*
2 | ALEXANDER VITRUK (SBN 315756)
*avitruk@bakerlaw.com*
3 | **BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
4 | Los Angeles, CA  90025-0509
Telephone:     310.820.8800
5 | Facsimile:     310.820.8859

6 | *Attorneys for Defendant*
THE REGENTS OF THE
7 | UNIVERSITY OF CALIFORNIA

8

9 | **UNITED STATES DISTRICT COURT**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

11 | KRYSTAL QUINTO, individually and on behalf of all other persons similarly situated,

12 | Plaintiff,

13 | v.

14 | THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

15 |

16 | Defendant.

Case No.:

[Alameda County Superior Court Case No.:  22CV012970]

**DEFENDANT'S NOTICE OF REMOVAL**

Action Removed:     July 29, 2022
Action Filed:           June 16, 2022

18 | <u>**NOTICE OF REMOVAL**</u>

19 | Over the past two decades, the federal government has engaged in an extensive effort to

20 | build a nationwide health information technology infrastructure. This case challenges the

21 | legitimacy of actions The Regents of the University of California ("UC Regents") has taken in

22 | connection with pursuing that directive. UC Regents therefore removes this case pursuant to the

23 | federal officer removal statute, 28 U.S.C. § 1442(a)(1).

24 | In like circumstances, as explained *infra* at pp. 8-9, district courts have allowed removal

25 | under the federal officer removal statute. *See Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675,

26 | at *6 (W.D. Pa. July 31, 2020); *see also Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581,

27 | 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020).

28

*Left margin:* BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

In support of removal, UC Regents provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

### NATURE OF THE CASE

1.     UC Regents is a nonprofit corporation, constituted by the provisions of Section 9 of Article IX of the California Constitution, that owns and governs the UCLA Health healthcare system.

2.     On June 16, 2022, Plaintiff Krystal Quinto filed a complaint against UC Regents, in the Superior Court of the State of California for the County of Alameda, Case No. 22CV012970.

3.     Plaintiff served UC Regents with the Complaint, effective on July 1, 2022.

4.     Plaintiff's three-count Complaint purports to challenge UC Regents' routine on-line practices as various invasions of privacy, including alleged violations of the California Invasion of Privacy Act, Cal. Penal Code § 631, Confidentiality of Medical Information Act Section 56.10, and California's Constitutional right to privacy. *See generally* Complaint.

5.     UC Regents operates a website, www.uclahealth.org, that provides information to the public about UCLA Health and access to medical records through a MyUCLAHealth patient portal.

6.     Plaintiff is a UCLA Health patient and alleges that she "has used www.uclahealth.org since 2018, and regularly accesses the website from her laptop, smartphone, and desktop computer—approximately two times each month." Compl. ¶ 8. "Plaintiff Quinto regularly uses www.ucleahealth.org to book medical appointments and access the UCLA patient portal." *Id*.

7.     Plaintiff alleges that, the Facebook Pixel, allegedly used on the UCLA Health website, "shares its patients' identities and online activity, including information and search results related to their private medical treatment." Compl. ¶ 31.

8.     The Facebook Pixel is one of several "Business Tools" offered by Facebook,[1] which "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Facebook, understand and measure their products and services, and better

---

[1] Facebook rebranded itself as Meta in 2021.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

reach and serve people who might be interested in their products and services." Compl. ¶¶ 26, 28. Facebook offers the Pixel as a piece of code for website owners to integrate into their website to assist in advertising. Compl. ¶ 28.

9.     Plaintiff does not assert that UC Regents discloses names, social security numbers, diagnoses, birth dates, or comparable information to the third-parties.

## BASIS FOR REMOVAL

10.     UC Regents removes this case pursuant to the federal officer removal statute. 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …" *Id*. § 1442(a)(1).

11.     The Supreme Court has directed that the federal officer removal statute is to be broadly construed, and defendants remove under this statute when they are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). To do so, a defendant must show that (a) it is a "person" within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a "colorable federal defense." *Riggs v. Airbus Helicopters, Inc*., 939 F.3d 981, 986–87 (9th Cir. 2019) (quoting *Fidelitad, Inc. v. Insitu, Inc*., 904 F.3d 1095, 1099 (9th Cir. 2018)).

12.     Since at least 2004, the federal government – through executive order, legislation, and regulatory and sub-regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology. It has incentivized and directed providers who participate in the Medicare and Medicaid program (like UCLA Health) to offer patients online access to their records, and to optimize patient engagement with their medical information. The federal government has also modeled the behavior it wants to see; it has created a portal for Medicare beneficiaries and worked with the same third-party services, with the same "source code," at issue in this case.

DEFENDANT'S NOTICE OF REMOVAL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13.     UCLA Health has dutifully assisted and followed the federal government's direction in this effort. In so doing, it has acted within the penumbra of federal action and office. Given this, and the Supreme Court's directive that the federal officer removal statute must be broadly construed, and because this suit challenges this federally-directed conduct, the requirements of the federal removal statute are satisfied.

### *The Meaningful Use Program*

14.     In 2004, President Bush issued an Executive Order that established a National Health Information Technology Coordinator (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). The purpose of the Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

15.     Five years later, Congress codified the office in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009). At that time, Congress allocated billions of dollars to CMS to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id*.

16.      Consistent with its mandate, the ONC has published guidance for private providers to follow, including through five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://dashboard.healthit.gov/strategic-plan/federal-health-it- strategic-plan-2015-2020.php) (emphasis added).  And, in the 2020-2025 plan, it noted that this has already happened, saying: "The federal government and private sector have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025* available at https://www.healthit.gov/sites/default/files/page/2020-01/2020- 2025FederalHealthIT%20StrategicPlan_0.pdf ("2020-2025 Strategic Plan").

17.     One critical aspect of this strategy is CMS' "Meaningful Use" program. 42 C.F.R. § 495.2-495.370. As the name implies, the program aims to increase patient's "meaningful use" and engagement with electronic health records through the creation of patient portals.

18.    Under this program, providers must meet certain criteria in order to receive full Medicare reimbursement, one of which is having an interoperable patient portal. Regulations provided for incentive payments of up to two percent for providers who reached certain level engagement with electronic health record use through the patient portal.

19.    To achieve those specifications, CMS recommends that providers create patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records.

The ONC has specified how providers can optimize such portals, explaining that they "must be engaging and user-friendly." ONC has also specified "how a patient portal helps achieve meaningful use requirements," and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013) available at

https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patienten gagement.pdf.

20.    In addition to this guidance, CMS has created its own portal, offering a model for private providers to follow. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and Facebook. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them. *See generally* Medicare.gov, Privacy Policy (explaining that website "users' activity on third-party websites that Medicare.gov links to (like Facebook or Twitter) is governed by the security and privacy policies of those websites," and that any information users "provide to register on Facebook is voluntarily contributed and isn't maintained by" CMS).

### *UC Regents Is A "Person"*

21.    By the plain terms of the statute, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

22.    While the statute is silent as to the definition of a "person", organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g., Arness v. Boeing N. Am., Inc.,* 997 F. Supp. 1268, 1272 (C.D.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

Cal. 1998); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992); *Teague v. Grand River Dam Auth.*, 279 F. Supp. 703, 704–05 (N.D. Okla. 1968) (public Grand River Dam Authority); *Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486 (1st Cir. 1989) (quasi-public telephone company).

23.     Regents is a non-profit entity organized in California, Compl. ¶ 6, and since the federal officer statute is to be broadly construed, the Regents qualifies as a person under that statute.[2]

### There is a Causal Nexus Between UC Regents' Actions and Plaintiff's Claims

24.     To demonstrate a causal nexus, the private person must show: (1) that the person was "acting under" a federal officer in performing some "act under color of federal office," and (2) that such action is causally connected with the plaintiff's claims against it. See *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017). The federal officer removal statute should be "liberally construed" to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147–49, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007).

### UC Regents is Effectively Acting Under a Federal Officer

25.     This element focuses on the relationship between the federal government and the private entity.  It asks whether the entity is engaged in "an effort to assist, or to help carry out, the duties or tasks of the federal superior," and whether the relationship between the government and private entity involves "detailed regulation, monitoring, or supervision." *Goncalves*, 865 F.3d at 1245 (citing to *Watson*, 551 U.S. at 152).

26.     Here these fundamental requirements are met. The federal government is incentivizing, regulating, monitoring, and supervising UC Regents' actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology.

---

[2] Although in many cases, the Regents does not meet the statutory definition of a "person," here, the federal officer statute's broad construction weighs in favor of that interpretation.

DEFENDANT'S NOTICE OF REMOVAL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

27.     First, UC Regents (along with countless other entities) is helping the government produce the nationwide, interoperable information technology infrastructure for health information. The federal government itself has repeatedly acknowledged the private sector's essential role in the project, most recently stating that "the federal government and private sector have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

28.     Second, in the absence of UC Regents' actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscores, it would likely attempt to do exactly that.

29.     Third, the government has specified how to best enhance patient engagement, including through a patient portal. It has clarified how to generally design the portals, and has told entities how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

30.     Finally, the government has created an office dedicated to this issue and has closely monitored the work of private entities (like UC Regents). It has also supervised the general development of this information technology infrastructure. And, because Meaningful Use incentives are available only to entities participating in the Medicare and Medicaid programs, CMS substantially incentivizes UC Regents and comparable organizations to not only maintain public websites and/or patient portals, but also to achieve meaningful use of them.

31.     In like circumstances, courts have held that defendant medical providers were "acting under" a federal officer while performing similar alleged conduct. *UPMC*, 2020 WL 4381675, at *6 (holding that the University of Pittsburgh Medical Center's participation in the Meaningful Use Program was sufficient to satisfy the "acting under" requirement necessary for the federal officer removal statute); *see also Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020) (same; "[b]ecause [ProMedica Health System's] participation assisted the federal government in achieving [the creation of a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

DEFENDANT'S NOTICE OF REMOVAL

32.     In *UPMC*, as in this case, plaintiffs sought redress under state law for UPMC's alleged disclosure of Plaintiff's personally identifiable information to third parties for internet marketing purposes without their knowledge or authorization. *UPMC*, 2020 WL 4381675, at *1. The UPMC court was focused on both the portal and the public website as being ways of furthering the government's goal of increasing patient engagement with electronic health records. *See, e.g.*, "UPMC, as a participant in the Meaningful Use Program, receives incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in accordance with the program's criteria." *Id*. at *6. Here, as in UPMC, "[t]here is plainly a connection or association between [the medical provider's alleged] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability. Plaintiff's claims are therefore 'for or relating to' an act under color of federal office." *Id*.

### *Plaintiff's Claims Relate to the Actions Under Color of Federal Office*

33.     Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office.

34.     Plaintiff's complaint directly challenges UC Regents' website analytics practices, which help drive patients to the UCLA Health website.

35.     Plaintiff's Complaint also generally targets UC Regents' alleged tracking of online behaviors through source code and cookies, along with the use of marketing companies in conjunction with its public medical website. This – as manifested by the government's own use of these third parties – is precisely what the Meaningful Use program envisions.

36.     Indeed, as Plaintiff herself alleges, the entire point of using the third-party services is to direct traffic to, and increase engagement with, UCLA Health's website. For example, she alleges that Facebook Business Tools "are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms." Compl. ¶ 26. Likewise, she says that the "Facebook Tracking Pixel" helps to ""track[] the people and type of actions they take." *Id*. ¶ 28.

DEFENDANT'S NOTICE OF REMOVAL

Baker & Hostetler llp
Attorneys at Law
Los Angeles

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*UC Regents Raises Colorable Federal Defenses to Plaintiff's Claims*

37.    The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. Cal.,* 489 U.S. 121, 129-30 (1989); *see also Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 969 (D. Ariz. 1992) ("The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.")

38.    There are at least two colorable federal defenses to the claims at issue here that satisfy this requirement.

39.    First, in response to Plaintiff's repeated claims that "protected health information" was disclosed, UC Regents will argue that the information purportedly disclosed (*i.e.*, IP addresses and other web metadata) is outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The Northern District of California has already made this holding in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

40.    Second, to the extent that they ever could create a viable cause of action under California law, UC Regents will argue that federal law preempts Plaintiff's common-law claims for alleged invasion of privacy. *See generally*, Compl. ¶¶ 91-97.

41.    Because each of the requirements of the statute are satisfied, removal to this Court is proper.

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

42.    UC Regents satisfies all of the procedural requirements under 28 U.S.C. § 1446.

43.    UC Regents is filing this Notice of Removal within thirty (30) days of its receipt of the Complaint by "service," 28 U.S.C. § 1446.

44.    UC Regents files this Notice in the United States District Court of the Northern District of California, because the State court in which the action is pending, the Superior Court of

Alameda County, is within this federal judicial district. This Notice is signed pursuant to Federal Rules of Civil Procedure, Rule 11.

45.     UC Regents has attached hereto as Exhibit "A" a true and correct copy of "all process, pleadings, orders, and other documents," currently on file in the state court, including Plaintiff's Complaint.

46.     Upon filing this notice, UC Regents will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the State court.

<div align="center"><u>**CONCLUSION**</u></div>

As set forth above, Plaintiff's Complaint directly challenges practices and procedures UC Regents has taken acting under color of federal law in implementing federal policy to nationalize the health information technology infrastructure. Plaintiff's Complaint is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1).

Respectfully submitted,

Dated: July 29, 2022                **BAKER & HOSTETLER LLP**

By:     */s/Teresa C. Chow*
        TERESA C. CHOW

*Attorneys for Defendant*
THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT "A"

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
KRYSTAL QUINTO, individually and on behalf of all others similarly situated.

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
06/16/2022
Chad Finke, Executive Officer / Clerk of the Court
By: _____ C. Clark _____ Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, County of Alameda 1225 Fallon Street, Oakland, CA 94612 | CASE NUMBER: *(Número del Caso):* 22CV012970 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
L. Timothy Fisher, Bursor & Fisher, P.A., 1990 N. California Blvd., Ste. 940, Walnut Creek, CA 94596, Tel. (925) 300-4455

DATE: 06/16/2022   Chad Finke, Executive Officer / Clerk of the Court   Clerk, by   C. Clark   , Deputy
*(Fecha)*   *(Secretario)*   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
   under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.
[Print this form] [Save this form] [Clear this form]

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
06/16/2022 at 05:26:34 PM
By: Cheryl Clark,
Deputy Clerk

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Philip L. Fraietta*
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
          pfraietta@bursor.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application Forthcoming*

*[Additional Counsel Listed on Signature Page]*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| KRYSTAL QUINTO, individually and on behalf of all other persons similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>        Defendant. | Case No. 22CV012970<br><br>CLASS ACTION<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Krystal Quinto files this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against The Regents of the University of California ("Defendant") which operates, controls, and manages the UCLA Health. Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.uclahealth.org, a website that Defendant owns and operates.

2.      Defendant aids employs, agrees, and conspires with Facebook to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information.  Plaintiffs bring this action for legal and equitable remedies resulting from these illegal actions.

## JURISDICTION AND VENUE

3.      The Court has personal jurisdiction over Defendant because UCLA Health resides in and does business in the State of California.

4.      This is a class action brought pursuant to Code of Civil Procedure §382, and this Court has jurisdiction over the Plaintiffs' claims because the amount in controversy exceeds this Court's jurisdictional minimum.

5.      Venue is proper under Code of Civil Procedure §395(a), §395.5, and Civil Code §1780(c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this county.

## THE PARTIES

### *Defendant*

6.      The Regents of the University of California is registered as a nonprofit entity with its principal place of business in California. Defendant employs approximately 227,000 individuals, and its projected annual revenue is $39 billion. As the owner and operator of UCLA

CLASS ACTION COMPLAINT                                                                         2

Health, Defendant offers a full range of medical services, including primary and outpatient care, and treats thousands of patients each year.

### Plaintiff

7.     Plaintiff Krystal Quinto is an adult citizen of the state of California and is domiciled in Huntington Beach, California.

8.     Plaintiff Quinto has used www.uclahealth.org since 2018, and regularly accesses the website from her laptop, smartphone, and desktop computer—approximately two times each month. Plaintiff Quinto regularly uses www.uclahealth.org to book medical appointments and access the UCLA patient portal. As described below, each time Plaintiff booked those medical appointments, she disclosed medical information regarding her medical condition, history or treatment.

9.     Plaintiff Quinto also has an active Facebook account which she has maintained since 2015. Plaintiff Quinto accesses her Facebook account from multiple devices, including her laptop, smartphone, and desktop computer.

10.     Pursuant to the systematic process described herein, UCLA Health assisted Facebook with intercepting Plaintiff Quinto's communications, including those that contained personally identifiable information, protected health information, and related confidential information. UCLA Health assisted these interceptions without Plaintiff Quinto's knowledge, consent, or express written authorization.

11.     By failing to receive the requisite consent, Defendant breached confidentiality and unlawfully disclosed Plaintiff Quinto's personally identifiable information and protected health information.

## FACTUAL ALLEGATIONS

**A.     Background of the California Information Privacy Act**

12.     The CIPA prohibits aiding or permitting another person to willfully—and without the consent of all parties to a communication—read or learn the contents or meaning of any

message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

13.     To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
> Or
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
> Or
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
> Or
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

14.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc*., 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

15.     Under Cal. Penal Code § 637.2, Plaintiff and Class Members may seek injunctive relief and statutory damages of $2,500 per violation.

**B.      Background of the CIMA**

16.      Pursuant to the California Confidentiality of Medical Information Act, "A provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." § 56.10(a).[1] "An authorization for the release of medical information . . . shall be valid if it:

(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

(c) Is signed and dated . . .

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization.

Cal. Civ. Code § 56.11.

17.      Moreover, a health care provider that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as

---

[1] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place. For example, UCLA Health could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* 56.10(b)(3) and 56.10(b)(6).

---

CLASS ACTION COMPLAINT                                                                                      5

implementing a system that records and discloses online patients personally identifiable information and protected health information.  Cal. Civ. Code § 56.36(c).[2] Similarly, if a negligent release occurs and medical information concerning a patient is improperly viewed or otherwise accessed, the individual need not suffer actual damages. Cal. Civ. Code § 56.36(b).

18.     "In addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: [¶] (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual damages, if any, sustained by the patient." *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551, 174 Cal. Rptr. 3d 653, 656 (2014)(quoting Cal. Civ. Code § 56.36(b).

### C.     UCLA Health's Website

19.     UCLA Health has over 200 primary-care clinics across Southern California, more than 1,000 primary care and specialist physicians, a total of 800 beds between its 4 hospitals, and has served over 700,000 patients within the last year.

20.     UCLA Health offers a full range of medical services, including primary and outpatient care. UCLA health specializes in diabetes and endocrinology, gastroenterology/gastrointestinal surgery, geriatrics, pulmonology and lung surgery, ophthalmology, orthopedics, psychiatry, cancer, neurology and neurosurgery, urology, and more.

21.     UCLA Health's website, www.uclahealth.org, is accessible on mobile devices and desktop computers, and UCLA health also offers an App that is available for download on Android and iPhone devices.

---

[2] "Every provider of health care ... who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care ... who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." (§ 56.101, subd. (a).)

**D.    Facebook's Platform and its Business Tools**

22.    Facebook describes itself as a "real identity platform,"[3] meaning users are allowed only one account and must share "the name they go by in everyday life."[4]  To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[5]

23.    In 2021, Facebook generated $117 billion in revenue.[6]  Roughly 97% of that came from selling advertising space.[7]

24.    Facebook sells advertising space by highlighting its ability to target users.[8] Facebook can target users so effectively because it surveils user activity both on and off its site.[9] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[10]  Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[11]

25.    Advertisers can also build "Custom Audiences."[12]  Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're

---

[3] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).

[4] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.

[5] FACEBOOK, SIGN UP, https://www.facebook.com/

[6] FACEBOOK, META REPORTS FOURTH QUARTER AND FULL YEAR 2021 RESULTS, https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx

[7] *Id.*

[8] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.

[9] FACEBOOK, ABOUT FACEBOOK PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

[10] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[11] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.

[12] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494.

loyal customers or people who have used [their] app or visited [their] website."[13] With Custom Audiences, advertisers can target existing customers directly, and they can also build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[14] Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools."[15]

26.    As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Facebook, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[16] Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

27.    The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase.[17] Facebook's Business Tools can also track other events. Facebook offers a menu of "standard events" from which advertisers can

---

[13] FACEBOOK, AD TARGETING, HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[14] Facebook, About Lookalike Audiences, https://www.facebook.com/business/help/164749007013531?id=401668390442328.

[15] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097953376494; Facebook, Create a Website Custom Audience, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494.

[16] FACEBOOK, THE FACEBOOK BUSINESS TOOLS, https://www.facebook.com/help/331509497253087.

[17] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142; FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

---

choose, including what content a visitor views or purchases.[18]  Advertisers can even create their

own tracking parameters by building a "custom event."[19]

28.     One such Business Tool is the Facebook Tracking Pixel.  Facebook offers this piece

of code to advertisers, like UCLA Health, to integrate into their website.  As the name implies, the

Facebook Pixel "tracks the people and type of actions they take."[20]  When a user accesses a website

hosting the Facebook Pixel, Facebook's software script surreptitiously directs the user's browser to

send a separate message to Facebook's servers.  This second, secret transmission contains the

original GET request sent to the host website, along with additional data that the Facebook Pixel is

configured to collect.  This transmission is initiated by Facebook code and concurrent with the

communications with the host website.  Two sets of code are thus automatically run as part of the

browser's attempt to load and read Defendant's websites—Defendant's own code, and Facebook's

embedded code.

29.     An example illustrates the point.  Take an individual who navigates to Defendant's

website and clicks on a tab for allergy information.  When that tab is clicked, the individual's

browser sends a GET request to Defendant's server requesting that server to load the particular

webpage.  Because UCLA Health utilizes the Facebook Pixel, Facebook's embedded code, written

in JavaScript, sends secret instructions back to the individual's browser, without alerting the

individual that this is happening.  Facebook causes the browser to secretly duplicate the

communication with UCLA Health, transmitting it to Facebook's servers, alongside additional

information that transcribes the communication's content and the individual's identity.

30.     After collecting and intercepting this information, Facebook processes it, analyzes

it, and assimilates it into datasets like Core Audiences and Custom Audiences.

---

[18] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS,
https://www.facebook.com/business/help/402791146561655?id=1205376682832142.

[19] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS,
https://www.facebook.com/business/help/964258670337005?id=1205376682832142; *see also*
FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[20] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.

---

**E.      How UCLA Health Discloses Class Members Protected Health Information And Assists With Intercepting Communications**

31.     Through the Facebook Pixel, UCLA Health shares its patients' identities and online activity, including information and search results related to their private medical treatment.

32.     For example, when a patient enters www.uclahealth.org and searches for a doctor, they select the "Find a Doctor" button shown in Figure 1 below.



Figure 1

33.     After selecting the "Find a Doctor" button, patients are directed to the "Find a Provider" page.



**Figure 2**

34.     If a user conducts a search, Defendant transmits the search terms used.



**Figure 3**



**Figure 4**

35.     Patients may also select the "Schedule now" or "See our doctors" button.

**Figure 5**

36.     After taking any of these actions on the Find a Provider page, patients are subsequently directed to the "Provider Search Results" page.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



**Figure 6**

17       37.    From the Provider Search Results page, patients are provided with the additional

18 filtering options that allow them to narrow search results based on "Area/Neighborhood" and the

19 provider's "Specialty." Patients can also narrow their search results based on the provider's gender,

20 spoken languages, and whether they are designated as an "LGBTQ Champion."

21
22
23
24
25
26
27
28





**Figures 7 & 8**

38.   Once a patient chooses a doctor, all of the information that patient has submitted on UCLA Health's website is automatically sent directly to Facebook.

39.     As shown in the image below, UCLA Health's website transmits the following information to Facebook: (1) the patient clicked on the specific provider's profile page (Dr. Allison Diamant), (2) the patient was seeking a female doctor specialized in Internal Medicine, (3) the patient sought a provider that is recognized as an "LGBTQ Champion," and (4) the patient sought a provider located in Santa Monica.



Figure 9 – An HTTP Single communication session is sent automatically from the patient device to Facebook, and it reveals the patients FID (c_user field) along with each search filter the patient selected.

40.     UCLA Health's website includes a feature that allows patients to book appointments through a particular doctor's profile page. Once the patient clicks on the "book an appointment" button, this action is immediately communicated and shared with Facebook.  Facebook classifies this event as a "SubscribedButtonClick," which indicates that the patient clicked the specific button (in order to book an appointment with Dr. Allison Diamant). Similarly, each doctor's profile page provides a direct link that allows a patient to call the doctor's office, and, upon clicking the telephone number button, the patient's click is shared with Facebook.

**Figure 10 – Note, for purposes of filing this complaint, the Facebook ID number has been redacted to maintain patient's confidentiality.**

41.    UCLA Health's website allows online patients to request an appointment with a doctor they have not been to before by completing an online form and selecting the "Request an Appointment" button. Upon doing this, Defendant shares the patient's selection immediately with Facebook.

Figure 11

42.     Moreover, throughout Defendant's website, patients can type queries into search bars, which transmits any communication entered, even if they contain a patient's treatment, procedures, medical conditions, and related queries.  When a patient searches for "HIV medicine," for example, that exact text query is sent to Facebook.



**Figure 12**

:path: /tr/?id=22283639227129O&ev=Microdata&dl=https%3A%2F%2Fwww.uclahealth.org%2Fsearch%3Fs%3DHIV%2520medicine%26f%255B0%255D%3Dtype%253Aprovider&rl=https%3A%2F%2Fwww.uclahealth.org%2Fsearch%3Fs%3DHIV%2Bmedicine&if=false&ts=1642515745868&cd[DataLayer]=%5B%5D&cd[Meta]=%7B%22titl e%22%3A%22Search%20%7C%20UCLA%20Health%22%7D&cd[OpenGraph]=%7B%7D&cd[Schema.org]=%5B%5D&cd[JS ON-LD]=%5B%5D&sw=1536&sh=864&v=2.9.48&r=stable&ec=1&o=30&fbp=fb.1.1640625648232.661784334&it= 1642515743709&coo=false&dpo=LDU&dpoco=0&dpost=0&es=automatic&tm=3&exp=p0&rqm=GET
:scheme: https
accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
accept-encoding: gzip, deflate, br
accept-language: en-US,en;q=0.9,he-IL;q=0.8,he;q=0.7
cookie: sb=qw4iYT-Z_p8ybndz7VKkxq52; datr=qw4iYVv80fZIyfpI_z08FMZV; c_user=100█████████; xs =37%3AJEnZ42UJabsIfA%3A2%3A1640864938%3A-1%3A15115%3A3AAcWemPx7dfxnqoAvSk8IUPvioF-7BcofON1zd WMTOA; fr=05JHLDPpaBUvMEtHs.AWVpgo6XJQAt2aEm_xHvepF2Fog.Bh3rtS.tx.AAA.0.0.Bh3rtS.AWW_E1mH7nY; dpr=1.25

**Figure 13**

43.     Similarly, UCLA Health's homepage has the following banner at the top:

1
2
3
4
5
6



7       44.     Upon clicking the hyperlinked "information on COVID-19", patients are directed to

8   the COVID-19 Section of the site, displayed in the image below.

9
10
11
12
13
14
15
16
17
18
19



20

21       45.     Thereafter, certain additional patient clicks are shared with Facebook. Specifically,

22   when a patient clicks on the "When is the best time to test for COVID-19?" page, this information

23   is shared with Facebook.

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12



Image captured from COVID-19 Section of UCLA Health website

13
14
15
16
17

46.     When a patient clicks the "Learn more" button to find information and support about "Long COVID symptoms", the patient is provided with an option to contact a primary caregiver by scheduling an appointment through the website or by phone. All of these patient actions are shared with Facebook.

18
19
20
21
22
23
24
25
26
27
28



Images captured from UCLA Health – "Coronavirus page"

47.    Each time Defendant sends this activity data, it also discloses a patient's personally identifiable information, including their Facebook ID ("FID"). An FID is a unique and persistent identifier that Facebook assigns to each user. With it, anyone ordinary person can look up the user's Facebook profile and name. Notably, while Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website. Indeed, ordinary persons who come into possession of the FID can connect to any Facebook profile.

48.    A user who accesses Defendant's website while logged into Facebook will transmit the c_user cookie to Facebook, which contains that user's unencrypted Facebook ID.  When accessing uclahealth.com, for example, Facebook receives even cookies, six of which are visible here:



| presence | C%7B... | .facebook.com |
| xs | 3%3Ar... | .facebook.com |
| c_user | 10003... | .facebook.com |
| fr | 00ZpYJ... | .facebook.com |
| datr | MalzYj... | .facebook.com |
| sb | qqAzY... | .facebook.com |

**Figure 14**

49.    When a visitor's browser has recently logged out of an account, Facebook compels the visitor's browser to send a smaller set of cookies.[21]



| fr | 00Zp... | .facebook.com |
| wd | 1156... | .facebook.com |
| sb | qqAz... | .facebook.com |
| datr | Malz... | .facebook.com |

**Figure 15**

---

[21] Not pictured here and in the preceding image is the _fbp cookie, which is transmitted as a first-party cookie.

50.     The fr cookie contains, at least, an encrypted Facebook ID and browser identifier. [22] Facebook, at a minimum, uses the fr cookie to identify users. [23]

51.     If a visitor has never created an account, an even smaller set of cookies are transmitted.



| sb | IAiFYlM_RxZ... | .facebook.com |
| fr | 0mBnQXleH... | .facebook.com |

**Figure 16**

52.     At each stage, Defendant also utilizes the _fbp cookie, which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a user. [24]



| _fbp | fb.1.165288... | .uclahealth.org |

**Figure 17**

53.     The fr cookie expires after 90 days unless the visitor's browser logs back into Facebook.[25]  If that happens, the time resets, and another 90 days begins to accrue.[26]

54.     The _fbp cookie expires after 90 days unless the visitor's browser accesses the same website.[27]  If that happens, the time resets, and another 90 days begins to accrue.[28]

55.     The Facebook Tracking Pixel uses both first- and third-party cookies.  A first-party cookie is "created by the website the user is visiting"—*i.e.*, UCLA Health.[29]  A third-party cookie

---

[22] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012),  http://www.europe-v-facebook.org/ODPC_Review.pdf.

[23] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[24] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[25] *See* FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[26] Confirmable through developer tools.

[27] *See* FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[28] Also confirmable through developer tools.

[29] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie. This is confirmable by using developer tools to inspect a website's cookies and track network activity.

---

is "created by a website with a domain name other than the one the user is currently visiting"—*i.e.*, Facebook.[30]  The _fbp cookie is always transmitted as a first-party cookie.  A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

56.     Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

57.     As shown in the above figures, Defendant sends these identifiers alongside the event data.

58.     Plaintiff never consented, agreed, authorized, or otherwise permitted UCLA Health to disclose her personally identifiable information and protected health information and assist with intercepting their communications.  Plaintiff was never provided with any written notice that Defendant discloses its website users' protected health information, nor was she provided any means of opting out of such disclosures. Defendant nonetheless knowingly disclosed Plaintiff's protected health information to Facebook.

59.     By law, Plaintiff is entitled to privacy in her protected health information and confidential communications. UCLA Health deprived Plaintiff of her privacy rights when it: (1) implemented a system that surreptitiously tracked, recorded, and disclosed Plaintiff's and other online patients' confidential communications, personally identifiable information, and protected health information; (2) disclosed patients' protected information to Facebook—an unauthorized third-party eavesdropper; and (3) undertook this pattern of conduct without notifying Plaintiff and without obtaining her express written consent. Plaintiff did not discover until that UCLA Health disclosed her personally identifiable information and protected health information to Facebook, and assisted Facebook with intercepting her communications, until April of 2022.

---

[30] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie. This is also confirmable by tracking network activity.

**CLASS ACTION ALLEGATIONS**

60.      Class Definition: Pursuant to Section 382 of the Code of Civil Procedure, Plaintiff brings this action on behalf of herself and other similarly situated individuals (the "Class"), defined as California citizens who, during the class period, had their personally identifiable information or protected health information improperly disclosed to Facebook as a result of using www.uclahealth.org.

61.      Plaintiff reserve the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

62.      The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consider of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

63.      Excluded from the Class is UCLA Health; any affiliate, parent, or subsidiary of UCLA Health; any entity in which UCLA Health has a controlling interest; any officer director, or employee of UCLA Health; any successor or assign of UCLA Health; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

64.      Numerosity/Ascertainability. Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in the Class. The identity of such membership is readily ascertainable from UCLA Health's records and non-party Facebook's records.

65.      Typicality. Plaintiff's claims are typical of the claims of the Class because Plaintiff used www.uclahealth.org and had her personally identifiable information and protected health information disclosed to Facebook without her express written authorization or knowledge. Plaintiff's claims are based on the same legal theories as the claims of other Class members.

66.      Adequacy. Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests are coincident with, and not

antagonistic to, those of the members of the Class.  Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

67.     Common Questions of Law and Fact Predominate/Well Defined Community of Interest. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct.  Questions of law and fact common to the Classes include:

(a)     Whether Defendant intentionally tapped the lines of internet communication between patients and their medical providers;

(b)     Whether UCLA Health's website surreptitiously records personally identifiable information, protected health information, and related communications and subsequently, or simultaneously, discloses that information to Facebook;

(c)     Whether Facebook is a third-party eavesdropper;

(d)     Whether UCLA Health's disclosures of personally identifiable information, protected health information, and related communications constitute an affirmative act of communication;

(e)     Whether UCLA Health's conduct, which allowed Facebook—an unauthorized person—to view Plaintiff's and Class Members' personally identifiable information and protected health information, resulted in a breach of confidentiality;

(f)     Whether UCLA Health violated Plaintiff's and Class Members' privacy rights by using Facebook's tracking pixel to record and communicate online patients' FIDs alongside their confidential medical communications;

(g)     Whether Plaintiff and Class Members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

(h)     Whether Defendant's actions violate Plaintiff's and Class Members' privacy rights as provided by the California Constitution

68.     <u>Superiority</u>. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.  Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 631

69.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

70.     The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.  The Act begins with its statement of purpose.

71.     California California penal Code § 631(a) provides, in pertinent part:

72.     A defendant must show it had the consent of <u>all</u> parties to a communication.

73.     At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiff's and Class Members' internet communications while accessing uclahealth.org.  These communications were intercepted without the authorization and consent of the Plaintiffs and Class Members.

74.     Defendant, when aiding and assisting Facebook's eavesdropping, intended to help Facebook learn some meaning of the content in the URLs and the content the visitor requested.

75.     The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the Facebook Tracking Pixel falls under the broad catch-all category of "any other manner":

a.     The computer codes and programs Facebook used to track Plaintiff and Class Members' communications while they were navigating uclahealth.org;

b.     Plaintiff's and Class Members' browsers;

c.     Plaintiff's and Class Members' computing and mobile devices;

d.     Facebook's web and ad servers;

e.     The web and ad-servers from which Facebook tracked and intercepted the Plaintiff's and Class Members' communications while they were using a web browser to access or navigate the uclahealth.org;

f.     The computer codes and programs used by Facebook to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using a browser to visit Defendant's website; and

g.     The plan Facebook carried out to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using a web browser or mobile application to visit Defendant's website.

76.     UCLA Health fails to mention is that it is using Facebook Pixel specifically to track and automatically transmit communications to a third party, i.e., Facebook. Moreover, the Privacy Policy states that sharing information about patients for marketing or sale of health information requires patients' written authorization (as it does for every disclosure of health information not provided for under the Privacy Policy).

77.     The patient communication information that UCLA Health is transmitting using Facebook Pixel, such as doctor appointment booking information, constitutes protected health information.

78.     As demonstrated hereinabove, UCLA Health violates CIPA by aiding and permitting third parties to receive its patients' online communications through its website without their consent.

79.     By disclosing Plaintiff's and the Class Members' Private Health Information, Defendant violated Plaintiff's and the Class Members' statutorily protected right to privacy.

80.     As a result of the above violations, Defendant is liable to the Plaintiff and other Class Members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Pursuant to CIPA Section 637.2, any person who has been injured by a violation of CIPA may recover $5,000 dollars per violation or three times the amount of actual damages (the greater of these two options). Additionally, Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiffs has suffered, or be threatened with, actual damages."

81.     Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

### COUNT II
**Violation of the California Confidentiality of Medical Information Act**
**Section 56.10**

82.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

83.     Under the California Confidentiality of Medical Information Act section 56.10 ("CMIA"), providers of health care are prohibited from disclosing medical information relating to their patients, without a patient's authorization. Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care... regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual...".

84.     Plaintiffs and Class Members are patients, and, as a health care provider, UCLA Health has an ongoing obligation to comply with the CMIA's requirements.

85.     As set forth hereinabove, Facebook ID is an identifier sufficient to allow identification of an individual. Along with patients' Facebook ID, UCLA Health discloses to Facebook several pieces of information regarding its patients' use of its website, which includes, but is not limited to: patient medical conditions, medical concerns, treatment patients are seeking, doctor appointments, medical specialty of the doctor(s) searched for by patients, and patient information regarding COVID-19.

86.     This patient information is derived from a provider of health care regarding patients' medical treatment and physical condition. Accordingly, it constitutes medical information pursuant to the CMIA.

87.     As demonstrated hereinabove, UCLA Health fails to obtain its patients' authorization for the disclosure of medical information and fails to disclose in its Privacy Policy and Privacy Practices that it shares protected health information for marketing purposes.

88.     Pursuant to to CMIA Section 56.11, a valid authorization for disclosure of medical information must be (1) "Clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization" (2) Signed and dated by the patient or his representative (3) State the name and function of the third party that receives the information (4) State a specific date after which the authorization expires. Accordingly, the information set forth in UCLA Health's Privacy Policy, Privacy Practices, and Terms and Conditions do not qualify as a valid authorization.

89.     Based on the above, UCLA Health is violating the CMIA by disclosing its patients' medical information with Facebook along with the patients' Facebook ID.

90.     Under the CMIA, a patient may recover compensatory damages, punitive damages not to exceed $3,000 dollars and attorneys' fees not to exceed $1,000, and the costs of litigation for any violating disclosure of medical information. Alternatively, a patient may recover nominal damages of $1,000 for any negligent release of medical information.

## COUNT III
### Invasion Privacy Under California's Constitution

91.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

92.     Plaintiff and Class Members have an interested in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff and Class Members' knowledge or consent.

93.     At all relevant times, by using Facebook's tracking pixel to record and communicate patients' FIDs alongside their confidential medical communications, UCLA Health intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

94.     Plaintiff and Class Members had a reasonable expectation that their communications, identity, health information and other data would remain confidential and that UCLA Health would not install wiretaps on www.uclahealth.org.

95.     Plaintiff and Class Members did not authorize UCLA Health to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

96.     This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

97.     Accordingly, Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a.   Determining that this action is a proper class action;

b.  For an order certifying the Class, naming Plaintiff as representatives of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

c.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

d.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

e.  Award compensatory damages, including statutory damages where available, to Plaintiff and the Class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial;

f.  For punitive damages, as warranted, in an amount to be determined at trial;

g.  Ordering Defendant to disgorge revenues and profits wrongfully obtained;

h.  For prejudgment interest on all amounts awarded;

i.  For injunctive relief as pleaded or as the Court may deem proper;

j.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

k.  Grant Plaintiff and the Class members such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff on behalf of herself and the proposed Class, demands a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: June 16, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  _L. Timothy Fisher_
         L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Philip L. Fraietta*
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
        pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: creilly@bursor.com

**MILBERG COLEMAN BRYSON PHILIPS GROSSMAN, PLLC**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
gklinger@milberg.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|

L. Timothy Fisher, State Bar No. 191626
Bursor & Fisher, P.A., 1990 N. California Blvd., Ste 940, Walnut Creek, CA 94596

TELEPHONE NO.: (925) 300-4455      FAX NO. *(Optional):* (925) 407-2700
E-MAIL ADDRESS: ltfisher@bursor.com
ATTORNEY FOR *(Name):* Plaintiff Krystal Quinto

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
06/16/2022 at 05:26:34 PM
By: Cheryl Clark,
Deputy Clerk

CASE NAME:
Krystal Quinto v. The Regents of the University of California

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 22CV012970 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [x] Substantial amount of documentary evidence
    d. [x] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4.  Number of causes of action *(specify):* Three
5.  This case [x] is [ ] is not a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: June 16, 2022
L. Timothy Fisher
_____
(TYPE OR PRINT NAME)     ▶     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

*Unified Rules of the Superior Court of California, County of Alameda*
F. ADDENDUM TO CIVIL CASE COVER SHEET

| Short Title: Krystal Quinto v. The Regents of the University of California | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW <u>UNLIMITED</u> CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[X] Oakland, Rene C. Davidson Alameda County Courthouse (446)
[ ] Hayward Hall of Justice (447)
[ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case?  [ ] yes  [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial    **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential    **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs    **[ ] Yes   [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [ ] Yes  [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>06/16/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: *Cheryl Clark*  Deputy<br>C. Clark |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |
| PLAINTIFF:<br>Krystal Quinto | |
| DEFENDANT:<br>The Regents of the University of California | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>22CV012970 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| Date: 10/14/2022    Time: 8:30 AM    Dept.: 23 |
|---|
| Location:  Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 |

TO  DEFENDANT(S)/ATTORNEY(S)  FOR  DEFENDANT(S)  OF  RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>06/16/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Cheryl Clark_ Deputy<br>C. Clark |
| PLAINTIFF/PETITIONER:<br>Krystal Quinto | |
| DEFENDANT/RESPONDENT:<br>The Regents of the University of California | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV012970 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Chad Finke, Executive Officer / Clerk of the Court

Dated: 06/20/2022                    By:

_Cheryl Clark_

C. Clark, Deputy Clerk

**CERTIFICATE OF MAILING**

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
06/23/2022 at 12:08:41 PM
By: Cheryl Clark,
Deputy Clerk

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North Carolina Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Philip L. Fraietta*
888 Seventh Avenue
New York, NY 10019
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@nursor.com
        pfraietta@bursor.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application Forthcoming*

*[Additional Counsel Listed on Signature Page}*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| KRYSTAL QUINTO, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | No. 22CV012970<br><br>**NOTICE OF APPERANCE OF COUNSEL** |

PLEASE TAKE NOTICE that John J. Nelson of Milberg Coleman Bryson Phillips Grossman

PLLC hereby provides this Notice of Appearance on behalf of Plaintiff to the Court and all Parties

NOTICE OF APPEARANCE                                                      1

and requests that the Court and all Parties take notice as follows:

Please forward all further notices, pleadings, discovery, and writing to my attention as follows:

> John J. Nelson, Esq.
> **MILBERG COLEMAN BRYASON PHILLIPS**
> **GROSSMAN, PLLC**
> 280 S. Beverly Drive
> Beverly Hills, CA 90212
> Tel: (917) 471-1894
> Fax: (865) 522-0049
> Email: jnelson@milberg.com

Dated: June 22, 2022                      Respectfully submitted,

John J. Nelson, Esq.
**MILBERG COLEMAN BRYASON PHILLIPS**
**GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel: (917) 471-1894
Fax: (865) 522-0049
Email: jnelson@milberg.com

*Attorney for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
06/23/2022 at 04:49:42 PM
By: Lynn Wiley,
Deputy Clerk

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Philip L. Fraietta*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: jarisohn@bursor.com
       pfraietta@bursor.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application Forthcoming*

*[Additional Counsel Listed on Signature Page]*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| KRYSTAL QUINTO, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No. 22CV012970<br><br>**PLAINTIFF'S NOTICE OF POSTING JURY FEES** |

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that Plaintiff Krystal Quinto hereby submits a jury fee deposit in the amount of $150.00 in the above-entitled action pursuant to California Code of Civil Procedure § 631(b).

Dated: June 23, 2022                    **BURSOR & FISHER, P.A.**


                                        By: _____
                                                L. Timothy Fisher

                                        L. Timothy Fisher (State Bar No. 191626)
                                        1990 North California Blvd., Suite 940
                                        Walnut Creek, CA 94596
                                        Telephone: (925) 300-4455
                                        Facsimile:  (925) 407-2700
                                        E-mail: ltfisher@bursor.com

                                        **BURSOR & FISHER, P.A.**
                                        Joshua D. Arisohn*
                                        Philip L. Fraietta*
                                        888 Seventh Avenue
                                        New York, NY 10019
                                        Telephone: (646) 837-7150
                                        Facsimile:  (212) 989-9163
                                        E-mail: jarisohn@bursor.com
                                                pfraietta@bursor.com

                                        **BURSOR & FISHER, P.A.**
                                        Christopher R. Reilly*
                                        701 Brickell Ave., Suite 1420
                                        Miami, FL 33131-2800
                                        Telephone: (305) 330-5512
                                        Facsimile: (305) 676-9006
                                        E-Mail: creilly@bursor.com

                                        **MILBERG COLEMAN BRYSON
                                        PHILIPS GROSSMAN, PLLC**
                                        Gary M. Klinger*
                                        227 W. Monroe Street, Suite 2100
                                        Chicago, Illinois 60606
                                        Telephone: 866.252.0878
                                        gklinger@milberg.com

                                        *Pro Hac Vice Application Forthcoming*

                                        *Attorneys for Plaintiff*

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>L. TIMOTHY FISHER (SBN 191626)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>  Telephone No:  925-300-4455 | *For Court Use Only*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>06/23/2022 at 04:45:50 PM<br>By: Lynn Wiley,<br>Deputy Clerk |

| | |
|---|---|
|   Attorney For:  Plaintiff | *Ref. No. or File No.:*<br>Quinto v. Regents |

*Insert name of Court, and Judicial District and Branch Court:*
SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF ALAMEDA

*Plaintiff:*  KRYSTAL QUINTO, individually and on behalf of all other persons similarly situated
*Defendant:*  THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

| **PROOF OF SERVICE**<br>**SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>22CV012970 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM; CLASS ACTION COMPLAINT; NOTICE OF CASE MANAGEMENT CONFERENCE

3.   *a.*  *Party served:*    THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
    *b.*  *Person served:*  STEVE POBLETE, SECURITY OFFICER

4. *Address where the party was served:*  1111 FRANKLIN STREET 8TH FLOOR, OAKLAND, CA 94607

5. *I served the party:*
  b. **by substituted service.**  On: Tue, Jun 21 2022 at: 01:20 PM I left the documents listed in item 2 with or in the presence of:
    STEVE POBLETE, SECURITY OFFICER .

  (1)  [ X ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
  (2)  [   ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
  (3)  [   ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
  (4)  [ X ]  **(Declaration of Mailing)** is attached.
  (5)  [   ]  **(Declaration of Diligence)** attached stating actions taken first to attempt personal service.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  [   ]  as an individual defendant.
  b.  [   ]  as the person sued under the fictitious name of *(specify)*:
  c.  [   ]  as occupant.
  d.  [ X ]  On behalf of *(specify)*:  THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
    under the following Code of Civil Procedure section:

| | |
|---|---|
| [   ] 416.10 (corporation) | [ X ] 415.95 (business organization, form unknown) |
| [   ] 416.20 (defunct corporation) | [   ] 416.60 (minor) |
| [   ] 416.30 (joint stock company/association) | [   ] 416.70 (ward or conservatee) |
| [   ] 416.40 (association or partnership) | [   ] 416.90 (authorized person) |
| [   ] 416.50 (public entity) | [   ] 415.46 (occupant) |
| [   ] other: | |



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE**
**SUMMONS**

*7257655*
*(7905229)*
Page 1 of 2

| | For Court Use Only |
|---|---|
| *Attorney or Party without Attorney:*<br>L. TIMOTHY FISHER (SBN 191626)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br> Telephone No: 925-300-4455<br><br> Attorney For: Plaintiff    *Ref. No. or File No.:*<br>                     Quinto v. Regents | |

| | |
|---|---|
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF ALAMEDA | |
| *Plaintiff:* KRYSTAL QUINTO, individually and on behalf of all other persons similarly situated<br>*Defendant:* THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | |

| **PROOF OF SERVICE<br>SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>22CV012970 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a.  Name:          Edgar Mendez
   b.  Address:       **FIRST LEGAL**
                     200 WEBSTER STREET, SUITE 201
                     OAKLAND, CA 94607
   c.  Telephone number:  (415) 626-3111
   d.  **The fee** for service was:  205.20
   e.  I am:
      (1)  [ ]  not a registered California process server.
      (2)  [ ]  exempt from registration under Business and Professions Code section 22350(b).
      (3)  [X]  a registered California process server:
         (i)    [ ] owner   [ ] employee   [X] independent contractor
        (ii)  Registration No:  2017-0001328, San Francisco
        (iii)  County:  San Francisco

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*



           06/21/2022
            *(Date)*                                    Edgar Mendez



Judicial Council Form POS-010                **PROOF OF SERVICE**                   7257655
Rule 2.150.(a)&(b) Rev January 1, 2007               **SUMMONS**                  (7905229)
                                                                    Page 2 of 2

| Attorney or Party without Attorney:<br>L. TIMOTHY FISHER (SBN 191626)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>  Telephone No:  925-300-4455<br><br>  Attorney For:  Plaintiff | | *For Court Use Only* |
|---|---|---|
| | *Ref. No. or File No.:*<br>Quinto v. Regents | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF ALAMEDA | | |
| *Plaintiff:*  KRYSTAL QUINTO, individually and on behalf of all other persons similarly<br>          situated<br>*Defendant:*  THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

| **PROOF OF SERVICE**<br>**By Mail** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>22CV012970 |
|---|---|---|---|---|

1.  *I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.*

2.  I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM; CLASS ACTION COMPLAINT; NOTICE OF CASE MANAGEMENT CONFERENCE

3.  By placing a true copy of each document in the United States mail, in a sealed envelope by First Class mail with postage prepaid as follows:
    a. Date of Mailing: Tue, Jun 21, 2022
    b. Place of Mailing: SAN FRANCISCO, CA
    c. Addressed as follows: THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
                  1111 FRANKLIN STREET, 8TH FLOOR OAKLAND, CA 94607

4.  *I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Tue, Jun 21, 2022 in the ordinary course of business.*

                  Recoverable cost Per CCP 1033.5(a)(4)(B)

5. *Person Serving:*
   a. Juan Cruz                          **d.** *The Fee for Service was:*  205.20
   **b. FIRST LEGAL**                    **e.** I am: Not a Registered California Process Server
     200 WEBSTER STREET, SUITE 201
     OAKLAND, CA 94607
   c. (415) 626-3111

6.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*


        06/21/2022                              _____

          *(Date)*                                        *Juan Cruz*




| Judicial Council Form | **PROOF OF SERVICE** | 7257655 |
|---|---|---|
| Rule 2.150.(a)&(b) Rev January 1, 2007 | **BY MAIL** | (7905229) |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse, Department 23

## JUDICIAL OFFICER: HONORABLE BRAD SELIGMAN

Courtroom Clerk: Nicole Hall                                            CSR: None

---

**22CV012970**                                                    July 19, 2022
                                                                  3:00 PM
**QUINTO**
  **vs**
**THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

---

## MINUTES

**NATURE OF PROCEEDINGS: Complex Determination Hearing**

The Complex Determination Hearing scheduled for 07/19/2022 is continued to 08/30/2022 at 03:00 PM in Department 23 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

*Nicole Hall*

By:      N. Hall, Deputy Clerk
                    Minutes of: 07/19/2022
                    Entered on: 07/19/2022

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

| | |
|---|---|
| Krystal Quinto<br><div align="center">Plaintiff/Petitioner(s)</div><div align="center">vs.</div>The Regents of the University of California<br><div align="center">Defendant/Respondent(s)</div> | No.     22CV012970<br><br>Date:   07/19/2022<br>Time:   3:00 PM<br>Dept:   23<br>Judge:  Brad Seligman<br><br><div align="center">ORDER re: Complex Determination</div><div align="center">Hearing</div> |

The Complex Determination Hearing scheduled for 07/19/2022 is continued to 08/30/2022 at 03:00 PM in Department 23 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.


Dated: 07/19/2022

Brad Seligman / Judge

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**07/29/2022 at 02:18:47 PM**
By: Shabra Iyamu,
Deputy Clerk

1  Teresa C. Chow, Esq. (SBN 237694)
   **BAKER & HOSTETLER LLP**
2  11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA  90025-0509
3  Telephone:    310.820.8800
   Facsimile:    310.820.8859
4  Email:        tchow@bakerlaw.com

5  *Attorneys for Defendant*
   THE REGENTS OF THE UNIVERSITY
6  OF CALIFORNIA

7  *Exempt from filing fees (Cal. Gov. Code § 6103)*

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                        **COUNTY OF ALAMEDA**

11  KRYSTAL QUINTO, individually and on       Case No.:  22CV012970
    behalf of all other persons similarly
12  situated,                                 [Hon. Brad Seligman; Dept. 23]

13                Plaintiff,                  **DEFENDANT'S PEREMPTORY**
                                              **CHALLENGE PURSUANT TO CAL.**
14        vs.                                 **CODE CIV. PROC. § 170.6**

15  THE REGENTS OF THE UNIVERSITY
    OF CALIFORNIA,                            Action Filed:  June 16, 2022
16
                  Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   I, Teresa C. Chow, declare as follows:

2   I am a Partner at the law firm of Baker & Hostetler LLP, attorneys for defendant THE

3   REGENTS OF THE UNIVERSITY OF CALIFORNIA ("Defendant"), a party to the above-

4   captioned action ("Action").  The Honorable Brad Seligman, before whom the Action is pending,

5   or to whom it has been assigned, is prejudiced against Defendant, or the interest of Defendant, so

6   that I believe that Defendant cannot have a fair and impartial trial or hearing before Judge

7   Seligman.

8   I declare under penalty of perjury, under the laws of the State of California, that the

9   foregoing is true and correct.

10  Dated:    July 29, 2022

**BAKER & HOSTETLER LLP**

11

12  By: _____

TERESA C. CHOW

13

*Attorneys for Defendant*

14  THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On July 29, 2022, I served a copy of the within document(s):

**DEFENDANT'S PEREMPTORY CHALLENGE**
**PURSUANT TO CAL. CODE CIV. PROC. § 170.6**

☑  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  I caused the foregoing documents to be served by sending an e-mail and attaching an image in PDF format to the party listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful

☐  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below.

☑  by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

### SEE ATTACHED MAILING LIST

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on July 29, 2022, at Los Angeles, California.

Nancy L. Brazil

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

## MAILING LIST

L. Timothy Fisher (State Bar No. 191626)
**BURSOR & FISHER, P.A.**
1990 North Carolina Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:     (925) 300-4455
Facsimile:     (925) 407-2700
E-mail:        ltfisher@bursor.com

Joshua D. Arisohn
Philip L. Fraietta
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
New York, NY 10019
Telephone:     (646) 837-7150
Facsimile:     (212) 989-9163
E-Mail:        jarisohn@nursor.com
               pfraietta@bursor.com

John J. Nelson, Esq.
**MILBERG COLEMAN BRYASON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone:     (917) 471-1894
Facsimile:     (865) 522-0049
Email:         jnelson@milberg.com

*Attorneys for Plaintiff*
KRYSTAL QUINTO, individually and
on behalf of all other persons similarly
situated,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## **PROOF OF SERVICE**

*Krystal Quinto v. The Regents of the University of California*

I, Nancy L. Brazil, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard , Suite 1400, Los Angeles, CA  90025-0509.  On July 29, 2022, I served a copy of the within document(s):

### **DEFENDANT'S NOTICE OF REMOVAL**

☑   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☑   by transmitting via e-mail or electronic transmission the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

### **SEE ATTACHED MAILING LIST**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.  Executed on July 29, 2022, at Los Angeles, California.



Nancy L. Brazil

1

## MAILING LIST

L. Timothy Fisher (State Bar No. 191626)
**BURSOR & FISHER, P.A.**
1990 North Carolina Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:      (925) 300-4455
Facsimile:      (925) 407-2700
E-mail:      ltfisher@bursor.com

Joshua D. Arisohn
Philip L. Fraietta
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
New York, NY 10019
Telephone:      (646) 837-7150
Facsimile:      (212) 989-9163
E-Mail:      jarisohn@nursor.com
      pfraietta@bursor.com

John J. Nelson, Esq.
**MILBERG COLEMAN BRYASON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone:      (917) 471-1894
Facsimile:      (865) 522-0049
Email:      jnelson@milberg.com

*Attorneys for Plaintiff*
KRYSTAL QUINTO, individually and
on behalf of all other persons similarly
situated

2